**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHIRSTOPHER MERCED,

                                        Plaintiff,

            - v -                                                   Civ. No. 9:05-CV-1426
                                                                            (FJS/RFT)
E. MOYLAN, Correctional Officer; C.O. LIPINSKI;[1]
SGT. BABBIE; CAPT. RELF, SUPERINTENDENT PERLMAN,

                                        Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

CHRISTOPHER MERCED
Plaintiff, *Pro Se*
03-R-5410
Attica Correctional Facility
Attica, N.Y. 14011

HON. ANDREW CUOMO                          ROGER W. KINSEY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, N.Y. 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff Christopher Merced brings this civil action pursuant to 42 U.S.C. § 1983

claiming that his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments were

violated as a result of a physical altercation with Defendant Correction Officer (C.O.) Moylan and

the events that followed.  Dkt. No. 1, Compl.  Defendants now bring this Motion for Summary

Judgment (Dkt. No. 28) to which Plaintiff has filed a Response in Opposition (Dkt. No. 32).  For the

---

        [1] Plaintiff misspelled Officer Lupinski's name in his Complaint as "Lipinski." We will use the correct spelling, "Lupinski" throughout.

reasons that follow, we recommend that Defendants' Motion for Summary Judgment be **granted** in part and **denied** in part.

## I.  FACTS

On September 11, 2004, an altercation occurred between Plaintiff and C.O. Moylan while Plaintiff was waiting outside his cell to be escorted to the shower by Defendant Moylan.  Compl. at [unnumbered] p. 4;[2] Dkt. No. 28, Defs.' 7.1 Statement at ¶¶ 9-12.  Plaintiff was serving a thirty (30) day sentence in the Special Housing Unit (SHU) of Mid-State Correctional Facility as a result of a  Misbehavior Report issued in August 2004.  Defs.' 7.1 Statement at ¶ 7.  As a procedural requirement in SHU, inmates are taken out of their cells three at a time with their hands cuffed behind their backs in order to be escorted to the shower area.  Pl.'s 7.1 Statement at ¶ 9.  The physical altercation was preceded by Moylan's reprimanding Plaintiff for allegedly speaking loudly in the gallery the previous evening after lights out.  Compl. at p. 4; Dkt. No. 28, Roger Kinsey, Esq., Affirm., dated Feb. 28, 2007, Ex. F, Inmate Misbehavior Rep., dated Sept. 11, 2004.  Moylan then asked Plaintiff if he understood what had been said.  *Id*.  Plaintiff claims that a brief argument ensued and then Moylan attacked him.  Defendant Moylan has asserted that Plaintiff twice attempted to head-butt him, forcing Moylan to subdue Plaintiff by forcibly ushering him into his cell and holding him against the cell wall until Plaintiff stopped struggling.  Kinsey Affirm., Ex. F, Moylan Memo, dated Sept. 11, 2004.

Plaintiff claims Moylan grabbed him by the back of his neck and threw him against the cell door, and then into his bedframe.  Compl. at p. 5.  Plaintiff claims Moylan slammed him twice against the door panel, causing a laceration on his left cheek, and then slammed him repeatedly

---

[2] Plaintiff uses numbered and lettered subsections in his Complaint.  He did not number the pages of his Complaint, but we have done so, and will refer to page number only for ease of reference.

against the back wall of his cell until Defendant Lupinski entered the cell, at which point Moylan released Plaintiff and left.  *Id*.  Shortly thereafter, Sergeants (Sgts.) Babbie and Grant[3] arrived, removed Plaintiff's handcuffs, and observed the condition of the cell.  *Id*.; Defs.' 7.1 Statement at ¶¶ 15-16.  Plaintiff was then escorted to the infirmary where he alleges that several digital pictures were taken of his body.  Compl. at p. 6.  Plaintiff was then returned to his cell and informed that he had been issued a Deprivation Order for violent conduct against a staff member.  *Id*.; Kinsey Affirm., Ex. C, Deprivation Order, dated Sept. 11, 2004.  The Deprivation Order recommended no recreation, no razor, and no out of cell activities in addition to Plaintiff's then-present confinement in SHU.  *Id*.

On September 12, 2004, Plaintiff was issued a Misbehavior Report charging him with creating a disturbance, assaulting the staff, and refusing a direct order.  Defs.' 7.1 Statement at ¶ 24.  Defendant Captain Relf conducted a Tier III Hearing that began on September 13, 2004, wherein Plaintiff was found guilty on all charges and sentenced to six months in SHU, six months loss of commissary, six months loss of phone use, and three months loss of good time.  *Id*. at ¶ 25; Compl. at ¶¶ 5-6.  The six month sentence in SHU was to commence on September 22, 2004, and end on March 22, 2005.  Kinsey Affirm., Ex. M, Hr'g Disposition, dated Sept. 22, 2004.  On September, 29, 2004, Plaintiff was transferred from Mid-State to Marcy Correctional Facility.  Defs.' 7.1 Statement at ¶ 27.  Plaintiff appealed the disciplinary decision and, on November 30, 2004, the decision was reversed and a rehearing ordered.  Defs.' 7.1 Statement at ¶ 28.  Mr. Mizgala[4] conducted the second Hearing on January 5, 2005, finding Plaintiff guilty on all charges and

---

[3] Sgt. Grant is not a Defendant in this action.

[4] Mr. Mizgala is not a Defendant in this action.

imposing penalties identical to those imposed after the first Hearing. *Id*. at ¶ 29; Compl. at p. 7. The conviction was reversed on appeal on March 1, 2005, and Plaintiff was released from SHU on March 10, 2005. Compl. at p. 7.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are

"more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) & *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B. Use of Excessive Force

Plaintiff claims he was assaulted and brutalized by Defendant C.O. Moylan in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et*

*al.*, 338 F.3d 155, 161 (2d Cir. 2003)).  To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) subjectively, that the Defendant acted wantonly and in bad faith, and (2) objectively, that the Defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillan*, 503 U.S. 1, 8 (1992)).

Regarding the objective element of our Eighth Amendment analysis, we note initially that " a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).  In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10).  However, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se* because in such an instances "contemporary standards of decency are always violated." *Blyden v. Mancusi*, 186 F.3d at 263 (citing *Hudson v. McMillian*, 503 U.S. at 9).  For example, "when a prison guard applies force against a prisoner that poses no reasonable threat simply because the guard loses his or her temper and wishes to wantonly inflict pain on the prisoner, a *per se* violation of the Eighth Amendment occurs." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (citation omitted).

The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d at 1033. To determine whether a defendant acted maliciously, several factors should be examined, including "the extent of the injury and the mental state of the defendant, as well

as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'" *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth*, 998 F.2d at 105).

In the case at bar, Plaintiff asserts Moylan attacked him without cause, throwing him against the cell door and into the bed frame before slamming him twice against the inner door panel, causing a small laceration on Plaintiff's face. Compl. at p. 5. Plaintiff's medical records indicate he suffered an abrasion and a three-quarter (3/4) inch laceration on his left cheek bone, an abrasion on his left shoulder, and a small scratch on his right knee. *Id.*, Ex. A, Ambulatory Health R. (AHR), entry dated Sept. 11, 2004. The treating nurse cleaned the cut and applied a band-aid to it, and recommended ice be applied to his left cheek. *Id.*

We find that there is a genuine issue of fact as to whether Defendant Moylan used force wantonly against Plaintiff. As plead by Plaintiff, Moylan unnecessarily and maliciously attacked him while he was handcuffed. Therefore, it is recommended that Defendants' Motion for Summary Judgment be **denied** on this claim.

## 1. Exhaustion

Defendants raise the affirmative defense of failure to exhaust administrative remedies. The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004).

The New York State Department of Corrections has created a three-step grievance process known as the Inmate Grievance Program (IGP). *See Abney v. McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004). First, the inmate must file a grievance complaint with the Grievance Clerk within twenty-one (21) days of the incident. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1). The complaint is then submitted to the Inmate Grievance Resolution Committee (IGRC) to review the grievance. *Id.* at § 701.5(b). Second, if the inmate disagrees with the IGRC decision, then the inmate may appeal to the Superintendent. *See id.* at § 701.5(c). Third, if the inmate disagrees with the Superintendent's determination, an appeal may be taken to the Central Office Review Committee (CORC) who renders a final administrative determination. *Id.* at § 701.5(d). Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983." *Colon v. Harvey*, 344 F. Supp. 2d 896, 897 (W.D.N.Y. 2004) (citing *Neal v. Goord* 267 F.3d 116, 122 (2d Cir. 2001) & *Santos v. Hauck*, 242 F. Supp. 2d 257, 259 (W.D.N.Y. 2003)).

The record shows that Plaintiff filed a grievance against Defendant Moylan, which was denied on September 29, 2004. Kinsey Affirm., Ex. D, Grievance Denial Lt., dated Sept. 29, 2004. Plaintiff did not appeal the decision to the Superintendent, but nevertheless opposes Defendants' claim of non-exhaustion. Dkt. No. 32, Pl.'s Resp. to Defs.' Mot. for Summ. J., at p. 6.

Both the Second Circuit and the Supreme Court have made clear that failure to exhaust is an affirmative defense. *See Johnson v. Testman*, 350 F.3d 691, 695 (2d Cir. 2004) (citing *Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir. 1999); *Jones v. Bock*, 127 S. Ct. 910, 921 (2007). Generally, failure to plead an affirmative defense results in its waiver. *See* FED. R. CIV. P. 8(c) & 12(b);

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994).  However, there is an exception to this rule where "the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party."  *Rose v. AmSouth Bank of Florida*, 391 F.3d 63, 65 (2d Cir. 2004) (citations omitted).

In the case at bar, Defendants failed to plead the affirmative defense of non-exhaustion in their Answer.  *See* Dkt. No. 9, Answer, at pp. 3-5.  Defendants made no attempt to amend their Answer, nor was there any pragmatic reason for this affirmative defense not to be plead.  Therefore, Defendants waived the affirmative defense of non-exhaustion by not pleading such defense in their Answer or otherwise seeking to amend it.  Plaintiff's Eighth Amendment claims are therefore not barred.

## 2. Personal Involvement

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Plaintiff makes no allegation that Defendants Lupinski, Babbie, Relf, or Perlman were personally involved in the altercation that is the basis of his Eighth Amendment claim.

Plaintiff states that Defendant Sgt. Babbie arrived after the incident, released Plaintiff's handcuffs, escorted him to the infirmary, and then later returned to his cell to take pictures of his injuries.  Plaintiff asserts Defendant Lupinski arrived at the end of the incident and escorted Plaintiff to the infirmary.  Plaintiff's suggestion in his Response to Defendants' Motion for Summary Judgment that Lupinski failed to intervene is contradicted by his initial Complaint, which states that the incident ended when Lupinski "ran into the cell," at which time Plaintiff was released by

Moylan.  Compl. at p. 5.  To the extent Plaintiff accuses Babbie and Lupinski of lying at his Disciplinary Hearing in an attempt to cover up Defendant Moylan's assault, we consider those allegations below in Part II-D.

Plaintiff makes clear in his Response to Defendants' Motion for Summary Judgment that his claims against Defendant Relf are brought only under the Due Process Clause.  *See* Dkt. No. 32, Pl.'s Resp. to Defs.' Mot. for Summ. J., at pp. 6-11 (asserting no personal involvement on the part of Relf as to the Eighth Amendment violation).  Similarly, Plaintiff's claims against Superintendent Perlman can only be construed as being brought under the Due Process Clause.  *See id*. at pp. 7-8. Finally, Plaintiff stated in his Deposition that he did not intend to bring Eighth Amendment claims against Defendants Lupinski, Babbie, Relf or Perlman.  Kinsey Affirm., Ex. A, Merced Dep., at p. 54-58.

It is therefore recommended that any Eighth Amendment claims be **dismissed** against Defendants Lupinski, Babbie, Relf, and Perlman for lack of personal involvement.

### C.  Due Process Violations

Plaintiff asserts his due process rights were violated during the course of his Disciplinary Hearings and also when he continued to be confined in SHU for ten days after his hearing disposition was reversed on appeal.  In order to state a procedural due process claim pursuant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from state statute or regulations.  *Id*.

The Supreme Court has narrowly circumscribed the scope of liberty interests emanating from

the Due Process Clause to protect "no more than the 'most basic liberty interests in prisoners.'" *Id*. (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).  However, when a prisoner is subjected to conditions that are "unexpected," *Sandin v. Conner*, 515 U.S. 472, 484 (1995), and  "qualitatively different from the punishment characteristically suffered by a person convicted of [a] crime," the Due Process Clause itself confers a liberty interest.  *Vitek v. Jones*, 445 U.S. at 493; *see also Washington v. Harper*, 494 U.S. 210 (1990).

In this case, Plaintiff's disciplinary confinement in SHU does not constitute an "unexpected" change in condition, nor did those conditions exceed the sentence imposed upon him.  *See Dawes v. Dibiase*, 1997 WL 376043, at *4 (N.D.N.Y. July 3, 1997) (citing *Washington v. Harper*, 494 U.S. 210 (1990) & *Vitek v. Jones,* 445 U.S. at 493 for the proposition that the Due Process Clause will apply by its own force only for deprivations much more severe than solitary confinement for a year). Therefore, Plaintiff does not have a liberty interest in remaining free from SHU confinement emanating from the Due Process Clause itself.

State statutes and regulations may also confer liberty interests to prisoners.  *Arce v. Walker*, 139 F.3d at 334 (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. at 460).  The Supreme Court held in *Sandin v. Conner* that state created liberty interests shall be limited to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. at 484.  Thus, a prisoner asserting a denial of due process as a result of segregated confinement or loss of privileges must (1) make a threshold showing that an atypical and significant hardship was imposed upon him, and (2) establish that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint."  *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

While the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert*, 179 F.3d at 28 (2d Cir. 1999), it has made clear that confinement in SHU for a period of one year constitutes atypical and significant restraint on inmates, deserving due process protections. *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (stating that confinement in SHU exceeding 305 days was atypical). In addition to duration, the "conditions of confinement are a distinct and equally important consideration in determining whether a confinement in SHU rises to the level of atypical and severe hardship[.]" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotations and citations omitted).

In the case at bar, Plaintiff was confined in SHU for a period of just under six months, from September 22 to March 10, 2004. In order to determine whether an atypical and significant hardship has been imposed for a period of intermediate duration (between 101 and 305 days) in SHU, courts must normally develop a detailed record of the conditions of confinement relative to normal prison conditions. *Id.* at pp. 64-65 (citing *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). However, because we find no due process violations occurred, we need not make such a factual inquiry nor determination.

### 1. Fair and Impartial Hearing

Plaintiff claims he was denied a fair and impartial Hearing because Defendant Relf, who presided over Plaintiff's initial Disciplinary Hearing, had previously issued the September 11, 2004, Deprivation Order which recommended no recreation, no razor, and no out of cell activities in addition to Plaintiff's continued confinement in SHU.

An inmate subject to a disciplinary hearing is entitled to an impartial hearing officer who does not prejudge the evidence. *Allen v. Cuomo,* 100 F.3d 253, 259 (2d Cir. 1996). But, it has been

*-12-*

held that "prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts." *Id*. (citing *Russell v. Selsky*, 35 F.3d 55, 60 (2d Cir. 1994) & *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)).

While the Second Circuit has suggested that bias exists when a hearing officer has participated in the investigation of an incident, *see Powell v. Ward*, 542 F.2d 101, 103 (2d Cir. 1976) & *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir. 1987), there is no evidence that Defendant Relf played such a role in this instance.  After the altercation, Defendant Babbie recommended that in addition to his previously imposed confinement in SHU, Plaintiff be denied recreation, razor, and all out of cell activities.  Kinsey Affirm., Ex. C, Deprivation Order, dated Sept. 11, 2004.  Defendant Relf then authorized the Deprivation Order based on Babbie's recommendation.  *Id*.  However, Relf did not participate in any part of the investigation of the incident, which was conducted by Defendant Sgt. Babbie.  *See* Dkt. No. 28, Babbie Aff., dated Nov. 15, 2006, Ex. A, Use of Force Memo, dated Sept. 11, 2004; Kinsey Affirm., Ex. O, Hr'g Tr. at pp. 20-22.

The Hearing Transcript reveals Defendant Relf made Plaintiff aware of all his rights, listened to Plaintiff's version of the incident, allowed him to call several witnesses and question them, and then made a decision based on the Misbehavior Report and the testimony of the witnesses.  In sum, Plaintiff has failed to point out any evidence in the record of impartiality on the part of Defendant Relf sufficient to raise a material issue of fact.

It is therefore recommended that Plaintiff's claim that he received an unfair and impartial Hearing be **dismissed**.

## 2.  Right to Present a Defense and Call Witnesses

Plaintiff contends he was wrongly denied the opportunity to submit photos into the record

*-13-*

at the Disciplinary Hearing.  Dkt. No. 32, Pl.'s Resp. to Defs.' Mot. for Summ. J., at p. 12.  A review

of the Hearing Transcript reveals that Defendant Relf denied the submission of photos of Plaintiff's

body because the medical records that were already a part of the record clearly indicated the extent

of Plaintiff's injuries.  *See* Hr'g Tr. at pp. 9-10.  Hearing officers may properly exclude irrelevant

or unnecessary testimony and other evidence at disciplinary hearings.  *Kalwasinksi v. Morse*, 201

F.3d 103, 109 (2d Cir. 1999).  The introduction of photos into the record would have been repetitive

and unnecessary, and it was therefore within Relf's discretion to deny them.

　　　　To the extent Plaintiff claims in his Deposition that he was unfairly denied the opportunity

to call as a witness Inmate Trantham,[5] said inmate refused to testify and filled out a "Refusal to

Testify Form" indicating as much.  Kinsey Affirm., Ex. P, Refusal to Testify Form, dated Sept. 11,

2004.  A failure to summon the testimony of a witness who has refused to testify, in the absence of

evidence that the refusal was linked to intimidation on the part of prison officials, does not violate

due process because calling a witness who refuses to speak upon questioning would be futile.  *Silva*

*v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993).  Thus, this claim is without merit.

　　　　Similarly, Plaintiff's complaint that he was denied the opportunity to call a witness a second

time after having already been given the opportunity to call and question that witness is without

merit.  As previously stated, a hearing officer is permitted to exclude unnecessary testimony.  *See*

*Kalwasinski v. Morse*, 201 F.3d at 109; *Walker v. McClellan,* 126 F.3d 127, 130 (2d Cir. 1997)

(citing *Ponte v. Real*, 471 U.S. 491, 496 (1985)).  Relf's decision to deny calling a witness who had

already testified was well within his discretion.

　　　　We therefore recommend that Summary Judgment on these claims be **granted**.

---

[5] *See* Kinsey Affirm., Ex. A, Dep. of Christopher Merced, dated May 16, 2006, at p. 67.

**3. Excessive Confinement**

Plaintiff asserts he was wrongly confined for a period of ten days after the decision from his second Tier III Disciplinary Hearing was reversed on March 1, 2005.  Though we think it unlikely such a short period of confinement would constitute an atypical and significant deprivation worthy of due process protection, we need not decide that question because it is clear that Plaintiff has no claim against any of the named Defendants.  Plaintiff was transferred from Mid-State to Marcy Correctional Facility long before he won his appeal on March 1, 2005.  Defs. 7.1 Statement at ¶ 27. Thus, none of the named Defendants, who are all DOCS employees at Mid-State, participated in the alleged excessive confinement imposed upon Plaintiff.  This claim should therefore be **dismissed** for lack of personal involvement.

**D.  Other Claims**

Although Plaintiff asserts in his Complaint that his rights were violated under the Fourth, Fifth, and Sixth Amendments, he has made no recognizable claim under any of those laws.  It is recommended that all claims brought under the aforementioned constitutional amendments be **dismissed**.

Plaintiff also asserts that Defendants Lupinski and Babbie lied during the Disciplinary Hearing and in their sworn statements to this Court.  *See* Dkt. No. 32, Pl.'s Resp. to Defs.' Mot. for Summ. J., at pp. 8-11.  However, such allegations fail to state a recognizable claim under the Due Process Clause.  Inmates have no constitutional protection against false testimony by a corrections officer at a disciplinary hearing; inmates are entitled only to due process in the proceeding itself. *Singleton v. Caron*, 2005 WL 2179402, at *7 (N.D.N.Y. Sept. 8, 2005) (citing *Davis v. State of New York*, 1999 WL 1390247, at *2 (W.D.N.Y. Dec. 14, 1999)).  Therefore, we recommend that this

claim be **dismissed**.

### E.  Qualified Immunity

Defendants assert they are entitled to qualified immunity.  Because we have rejected all claims against Defendants Lupinski, Babbie, Relf, and Perlman, we need not consider this argument as to those Defendants.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Regarding the remaining Eighth Amendment claim of excessive force against Defendant Moylan, the defense of qualified immunity cannot rationally apply.  Attacking a handcuffed prisoner and causing injury, without provocation, constitutes a clear Eighth Amendment violation of which a reasonable person should have known. *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986).  Defendant Moylan is therefore not entitled to qualified immunity.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 28) be **denied** as to the claim of excessive force against Defendant Moylan, and **granted** as to all other claims against all Defendants; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fᴇᴅ. R.

Civ. P. 72, 6(a), & 6(e).

Date:    September 28, 2007
         Albany, New York


_____
RANDOLPH F. TREECE
United States Magistrate Judge